IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 08-cv-01175-RPM

AMERICAN AUTOMOBILE INSURANCE COMPANY,

      Plaintiff,

v.

LIFECO, INC.,
JIMMY CLARK,
MELISSA A. MILLER, and
DENNLY BECKER,

      Defendants.

---

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

This action is an insurance coverage dispute regarding the scope of professional liability

coverage provided by American Automobile Insurance Company ("AAIC") pursuant to Policy

Number 8-17 ME 07318240, issued July 1, 2006, to agents of Assurity Security Group, Assurity

Life Insurance Company, Security Financial Company and Woodman Accident and Life ("the

Policy").  AAIC seeks a judgment declaring that it was not obligated to defend claims brought

by Melissa Miller and Dennly Becker against LifeCo, Inc. ("LifeCo") in a civil action designated

as Case No. 07-CV-782, in the District Court for Arapahoe County, Colorado ("the Underlying

Action"), and has no liability to pay a consent judgment for the plaintiffs in that action under the

indemnification provisions of the Policy.

On February 27, 2009, AAIC moved for summary judgment, requesting a determination that AAIC had no duty to defend the Underlying Action and has no duty of indemnification.

LifeCo is a privately held Oklahoma corporation with its principal place of business in Colorado.  It is described as an agent oriented independent marketing company providing research about insurance companies and products to independent agents and developing leads primarily for the insurance industry.  (Underlying Compl. ¶¶ 6-7, Pl.'s Ex. 1.)  During the relevant time period, LifeCo presented informational seminars to persons interested in financial planning.  (*Id*. ¶ 17.)

From November 1999 through July 2005, Robert Bryant ("Bryant") was the President of LifeCo.  (*Id.* ¶ 10.)  From approximately April, 2004 through April, 2006, Bryant was involved in selling investments for National Consumer Mortgage, LLC ("NCM").  The NCM investments were represented to be notes secured by deeds of trust.  (*Id.* ¶¶ 11-13, 20-22.)  NCM's owner was actually operating a Ponzi scheme.  (*Id*. ¶ 24.)

The Underlying Complaint alleges that Bryant's employment with LifeCo was terminated in July 2005, when LifeCo's other owners learned that Bryant was soliciting investments on behalf of NCM and violating securities laws.  (*Id*. ¶ 23.)  When the Underlying Complaint was filed in April 2007, Bryant had been indicted on criminal charges relating to the NCM scheme.  (*Id*. ¶ 25.)[1]

---

[1]In October 2007, Bryant pleaded guilty to several counts of securities fraud in a criminal action in the District Court for Douglas County, Colorado.  *See* Paragraph 4 of the Stipulation for Entry of Final Agency Action in the Matter of the Insurance Producer License of Robert Olan Bryant, Division File No. 202802, Before the Division of Insurance, State of Colorado. (Pl.'s Ex. 2.)

Jimmy Clark ("Clark") became LifeCo's President in approximately June 2007.  The

Defendants' Response Brief states, "Both before and after June 2007, Mr. Clark has been a

sharholder [sic], director, employee, and office manager of LifeCo."  (Defs.' Am. Resp. Br. at 9.)

Clark is an insurance agent.  Clark's relationship with Assurity Life Insurance Company

and/or Security Financial Life Insurance Company entitled him to enroll for coverage under

AAIC Policy Number 8-17 MC 07318240, issued to agents of Assurity Security Group, Assurity

Life Insurance Company, Security Financial life Insurance Company and Woodman Accident

and Life Company (Pl.'s Ex. 16).  The Policy is a claims-made errors and omissions liability

policy, having an effective date from July 1, 2006 to July 1, 2007, and a retroactive date of

September 20, 2005.

On or about January 22, 2007, Clark submitted the enrollment form and premium

payment, allowing him to be added as a Named Insured under the Policy.  (Pl.'s Ex. 17.)  Clark

elected Coverage Level II.

On April 25, 2007, Melissa Miller and Dennly Becker brought an action for damages

against LifeCo in the District Court for Arapahoe County, Colorado, alleging that they had

invested in the fraudulent NCM notes as a result of Bryant's solicitations.  The Underlying

Complaint alleged that Bryant marketed the NCM notes to persons whose names appeared in

LifeCo's databases and represented that the notes were an investment product offered jointly by

LifeCo and NCM.  (Underlying Compl. ¶¶ 11-15.)  The Underlying Complaint alleges that

Miller became acquainted with Bryant when she obtained insurance for her dental business

through LifeCo.  (Id. ¶¶ 16-17.)  Bryant contacted Miller about investing in the NCM notes, and

then contacted Becker, who is Miller's father.  (Id. ¶¶ 2, 18, 20.)  During 2005 and 2006, Miller

-3-

paid $575,000 and Becker paid $250,000 for the purchase of NCM notes, believing they were

investing in notes secured by real estate mortgages. (*Id.* ¶¶ 19, 21.)  Miller and Becker alleged

that Bryant falsely or recklessly misrepresented the nature of the notes because he either knew or

should have known that the notes were not secured. (*Id.* ¶ 22.)  Miller and Becker alleged that

they lost their investment when NCM went into bankruptcy. (*Id.* ¶¶ 25-26.)  They asserted three

claims for relief against LifeCo:  (1) negligence; (2) negligent hiring and supervision of Bryant,

and (3) *respondeat superior* liability for Bryant's misrepresentations.  They made no claim

against Clark.

On or about June 15, 2007, Clark gave notice of the Underlying Complaint to AAIC.  In

a letter dated September 28, 2007, AAIC declined coverage, stating its position that the acts

giving rise to the claims in the Underlying Complaint do not fall within the Policy's coverages

and that coverage was precluded by several Policy exclusions. (Pl.'s Ex. 18.)  LifeCo obtained

counsel to defend these claims.  After discovery and shortly before trial,  Miller, Becker and

LifeCo stipulated to the entry of judgment in the Underlying Action on April 2, 2008. (Pl.'s Ex.

3.)  Judgment entered in favor of Miller and against LifeCo in the principal amount of $575,000.

Judgment entered in favor of Becker and against LifeCo in the principal amount of $250,000.

The terms of the settlement agreement included a *Bashor* agreement. (*See* Courtroom Minutes,

Oct. 15, 2008, Dkt. 8).  A *Bashor* agreement is a settlement agreement in which "[t]he prevailing

party agrees not to execute on the judgment in exchange for the defendant's agreement not to

appeal the judgment and instead to pursue claims against the third parties (and share any

recovery with the original plaintiff)." *Stone v. Satriana*, 41 P.3d 705, 707-08 n.2 (Colo. 2002)

(citing *Northland Ins. Co. v. Bashor*, 494 P.2d 1292 (Colo. 1972)).  "[T]he term 'Bashor

agreement' has also been used to describe agreements whereby the insured formally assigns its claims against the insurer to the third party plaintiff in exchange for a covenant not to execute on the insured's assets." *Old Republic Ins. Co. v. Ross*, 180 P.3d 427, 431 (Colo. 2008).

In April 2008, Miller and Becker served writs of garnishment on AAIC, seeking to collect insurance proceeds that they contend AAIC owes to LifeCo under the Policy.  AAIC responded, denying that it owes any payments or other obligations to LifeCo.

Federal jurisdiction is alleged based on diversity of citizenship, 28 U.S.C. § 1332.  The parties agree that the substantive legal issues are to be determined according to Colorado law.

The original complaint, filed June 4, 2008, alleged that the Plaintiff is a corporation organized under the laws of the State of Missouri with its principal place of business in Novato, California and that LifeCo is a corporation organized under the laws of Oklahoma with its principal place of business in Colorado.  The Complaint, on information and belief, alleged that Clark and Miller reside in Colorado and Becker is a resident of California.  These allegations do not support the claim of subject matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332.  The disclosure statement filed with the Complaint identified AAIC as an indirect subsidiary of Fireman's Fund Insurance Company, a California corporation, which is a wholly owned subsidiary of another California corporation which is a subsidiary of a Delaware corporation that is a subsidiary of Allianz AG, of undisclosed origin.

The Defendants' Answer filed on August 11, 2008, denied diversity jurisdiction.  An Amended Complaint was filed at the Scheduling Conference on October 15, 2008.  The Plaintiff changed its jurisdictional allegation to allege its principal place of business to be in Missouri.

In their response to the Plaintiff's motion for summary judgment filed on March 30, 2009, the Defendants cited to pleadings in other civil actions and other public documents to support their challenge to diversity jurisdiction, showing that AAIC is inconsistent in its statements of the location of its principal place of business.  In reply, AAIC did not explain the inconsistencies in the pleadings in the other cases, but asserted that as the Policy shows, it is one of the Fireman's Fund Insurance Companies and the office of Fireman's Fund is in Novato, California.  The Plaintiff also presents its by-laws showing its principal office in St. Louis, Missouri and its pleadings in other cases with jurisdiction based on its allegations that it is a Missouri corporation with its principal place of business in Missouri.  There is no reason for this Court to conduct an evidentiary hearing on this issue.  The allegation in the Amended Complaint is accepted.

An additional reason for proceeding under diversity jurisdiction is that the real parties in interest in this case are AAIC as the Plaintiff with Jimmy Clark and LifeCo, claiming as named insureds under the subject policy.  The California resident, Dennly Becker, has no separate standing.  His interest is derivative of his assignor under the *Bashor* agreement discussed *supra*. Accordingly, he has no separate interest in the insurance coverage.  While *Bashor* agreements have been recognized as valid in some circumstances in Colorado, it is questionable whether the agreement in this case is valid, given that the underlying lawsuit was settled with no adjudication of the merits of the claims made against LifeCo.  *See Old Republic Ins. Co.*, 180 P.3d at 430-35.

The insurer's duty to defend is determined without regard to the merits of the underlying action and if no duty to defend is shown, it follows that there is no obligation to indemnify

payment of the agreed judgment.  The allegations of the complaint in the Underlying Action are taken as true for purposes of this civil action.

The first question to be determined is whether AAIC was obligated to defend the Underlying Action.  The duty to defend is distinct from and broader than the duty to indemnify. *Constitution Assocs. v. N.H. Ins. Co.*, 930 P.2d 556, 563 (Colo. 1996).

When the question is the insurer's duty to defend, "the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot." *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 301 (Colo. 2003)(quoting *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 614 (Colo. 1999)).  The insurer always bears the burden of proving the applicability of a policy exclusion.  *See Hecla Mining Co. v. N.H.  Ins. Co.,* 811 P.2d 1083, 1090 (Colo. 1991)("In order to avoid policy coverage, an insurer must establish that the exemption claimed applies in the particular case, and that the exclusions are not subject to any other reasonable interpretation.").  *See also Commercial Union Ins. Co. v. Albert Pipe & Supply Co.*, 484 F.Supp. 1153, 1155 (D.C.N.Y. 1980) ("The insured has the burden of proving that the claim asserted against it comes within the coverage of the policy while the insurer has the burden of proving that the facts fall within the policy's exclusionary clauses.")

The duty to defend is to be determined from the complaint in the underlying action:

> An insurer's duty to defend arises when the underlying complaint against the insurer alleges any facts that might fall within the coverage of the policy.  The actual liability of the insured to the claimant is not the criterion which places upon the insurance company the obligation to defend. Rather, the obligation to defend arises from allegations in the complaint, which if sustained, would impose a liability covered by the policy.

*Hecla Mining Co.,* 811 P.2d at 1089 (citation, footnote, brackets and internal quotation marks omitted).  *See also Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 828 (Colo.

2004); *Pompa v. Am. Family Mut. Ins. Co.*, 520 F.3d 1139, 1145-47 (10th Cir. 2008) (discussing the "complaint rule").

"In the duty to defend context, the 'complaint rule' operates to cast a broad net, such that when the underlying complaint alleges *any facts* or claims that might fall within the ambit of the policy, the insurer must tender a defense." *Cyprus Amax Minerals Co.*, 74 P.3d at 301(emphasis in original).  The duty to defend, although broad, is not without limits.  For example, "if an underlying complaint fails to allege facts satisfying one of the elements of a claim covered in an insurance policy, an insurer has no duty to defend against that claim." *Thompson v. Maryland Cas. Co.,* 84 P.3d 496, 503-04 (Colo. 2004).  In addition, an insurer may properly refuse to defend when it can establish that the allegations of the underlying complaint are solely and entirely within policy exclusions.  *Id.* at 505-508; *Hecla Mining*, 811 P.2d at 1090.

The negligence claims are the focus of this coverage dispute.  The Defendants acknowledge that there is no coverage for the *respondeat superior* claim.

In support of their first claim (for negligence), Miller and Becker alleged:

28.     Defendant LifeCo owed Plaintiffs certain duties, including a duty of reasonable care to safeguard its client information from unauthorized disclosure, a duty not to mislead clients and leads, and a duty to inform customers of the true facts when it learned that its officers and employees had communicated material misinformation to its customers.

29.     Upon information and belief, LifeCo breached that duty of care by negligently and recklessly allowing Bryant to gain access to its leads and client databases, and upon information and belief, by allowing incorrect and misleading information to be communicated to clients and leads, and by allowing the fraudulent National Consumer Mortgage, LLC investment scheme to be promoted and endorsed by Bryant as an officer and employee of LifeCo.

30.     LifeCo was negligent in not having reasonable oversight and supervision of its employees so as to avoid such schemes being carried out, and for

failing to inform its leads and clients of the true circumstances when it learned of Bryant's actions.

(Underlying Compl. ¶¶ 28-30.)

In support of their second claim (for negligent hiring and supervision), Miller and

Becker alleged:

33.     Defendant LifeCo owed Plaintiffs a duty of reasonable care in its hiring, supervision, and retention of employees.  In particular, Bryant had a previous employment history that included being discharged from employment in the securities industry for "selling away" securities without prior notice or approval from his employer, and was under investigation during 2004-05 by the Arkansas Securities Department for selling unregistered securities.  This information, which LifeCo either was aware of, or reasonably should have been aware of, put LifeCo on notice of Bryant's history of such conduct.

34.     Upon information and belief, LifeCo breached that duty of care both negligently and recklessly by hiring, failing to supervise, and retaining Bryant as an officer and agent of LifeCo notwithstanding its knowledge of Bryant's past conduct and its knowledge that Bryant used LifeCo as an instrumentality to facilitate his sale of unsecured mortgage notes to customers obtained through its leads and client databases.

35.     LifeCo was negligent in failing to take reasonable steps to prevent Bryant from marketing and selling the unsecured mortgage notes to its clients, despite its opportunity to control his conduct.

(Underlying Compl. ¶¶ 33-35).

The coverage dispute arises out of disagreement about the extent to which these

allegations implicate Clark's conduct.  Clark's role is pivotal because coverage for LifeCo

results, if at all, from Clark's status as a "Named Insured."

The Policy Definitions are found in Paragraph IV of the Insuring Agreement, as modified

by Coverage Enhancement Endorsement – Level II.  The Insuring Agreement provides:

F.      "NAMED INSURED" shall mean:

  1.      All Agents, General Agents or General Managers of the SPONSORING LIFE COMPANY provided that:

    a.      these agents have paid their premium, and

    b.      they are party to a valid contract with the SPONSORING LIFE COMPANY on the effective date of this Policy, and

    c.      they are licensed by the appropriate authorities to solicit and sell products and/or services made available by the SPONSORING LIFE COMPANY.

  Such individuals shall be specifically designated by name and their names shall be on file with the Company. Any new Agent, General Agent or Manager of the SPONSORING LIFE COMPANY who shall become a party to a valid contract with the SPONSORING LIFE COMPANY after the effective date of this Policy shall become a NAMED INSURED upon the effective date of such contract and they have paid their premium.

(Policy, Form 1144050 05-00, at p. 5.)  It is undisputed that Clark is a Named Insured.  LifeCo

was not a "Sponsoring Life Company"and is not a "Named Insured."

  The definition of "Insured" includes the individual Named Insured and:

  1.      Any corporation, partnership or other business entity which engages in PROFESSIONAL SERVICES and;

    a.      is either owned or controlled by the NAMED INSURED, or

    b.      in which the NAMED INSURED is an employee.

(Policy, Form 1144050 05-00, at p. 4.)

  "Professional Services" are defined in the applicable endorsement to mean:

J.      " . . . those services necessary to the conduct of the insurance business of the NAMED INSURED. . . . PROFESSIONAL SERVICES shall include the following:

  1.      The sale and/or servicing of:

-10-

a.   Life Insurance, Accident and Health Insurance (including Blue Cross/Blue Shield Organizations);

b.   Workers' Compensation Insurance when issued as part of a 24 Hour Coverage Plan;

c.   Disability Income Insurance;

d.   Annuities;

e.   Variable products, including, but not limited to:

    (1)   Variable Annuities, Flexible and Schedule Premium Annuities;

    (2)   Variable Life Insurance;

    (3)   contracts providing for participation in life insurance company separate investment accounts or life insurance company general investment accounts;

    (4)   administrative insurance agreements;

f.   Employee Benefit Plans, other than Multiple Employer Welfare Arrangements, including:

    (1)   Group Plans;

    (2)   Group or Ordinary Pension and/or Profit Sharing Plans;

    (3)   Retirement Annuities;

    (4)   Life, Accident and Health, and/or Disability Plans; and

    (5)   plans which do not use an insurance product as a funding vehicle;

g.   Mutual Funds registered with the Securities and Exchange Commission.

2.      Providing advise, consultation, administration, other than third
        party claims administration and services, including those of a
        Notary Public, in conjunction with any of the products listed in
        Insuring Agreement IV, Definitions, J(1) above, whether or not a
        separate fee is charged.

3.      Financial planning activities including the recommendations or
        preparation of a financial program for a client involving the client's
        present and anticipated assets and liabilities, including
        recommendations regarding saving, investments, insurance,
        anticipated retirement or other employee benefits.

(Policy, Form 144053 05-00, at pp. 2-3.)

The Defendants contend that LifeCo qualifies as an Insured because Clark was a Named

Insured, and Clark was an employee and shareholder of LifeCo.  Under the Policy's definition of

an insured, an entity must be engaged in "services necessary to the conduct of the insurance

business of the NAMED INSURED."  LifeCo can only be an "Insured" for Clark's activities as

an agent for the insurance companies named.  There is no allegation in the Underlying

Complaint that connects Clark as an agent for those companies with Bryant's conduct directed to

Miller and Becker.

The coverages are set forth in Paragraphs I(A)-(D) of Coverage Enhancement

Endorsement – Level II (Form 144053 05-00).  The Defendants acknowledge that Paragraph

I(C) does not apply.

Paragraph I(B) is also inapplicable.  Paragraph I(B) lists six categories of services –

services under (1) ERISA; (2) the 1933 Securities Act; (3) the 1934 Securities Exchange Act:

(4) the Investment Company Act of 1940; (5) the Investment Advisors Act of 1940, or

(6) amendments to those acts.  The Underlying Complaint does not allege negligence with

respect to any of those six categories of services.

The Defendants contend that Paragraph I(A) provides coverage. Paragraph I(A) obligates AAIC to pay on behalf of the Insured, all sums which the Insured shall become legally obligated to pay as damages because of:

A.      Any act, error or omission of the INSURED in rendering or failing to render PROFESSIONAL SERVICES for others as:

        1.      A licensed Life Agent, Broker, General Agent or Manager;

        2.      A licensed Accident and Health Agent, Broker, General Agent or Manager;

        3.      Financial Planner, Financial Consultant, Investment Counselor, Investment Advisor or Registered Investment Advisor,

        4.      Notary Public;

        5.      Registered Representative;

      while there is in effect a valid contract between the NAMED INSURED and the SPONSORING LIFE COMPANY.

(Policy, Form 144053 05-00, at p. 1 of 4.)

Paragraph I(A) does not provide coverage for the negligence claims in the Underlying Complaint. The five categories of services described in Paragraph I(A) are services that can only be provided by individuals. Generalized allegations about LifeCo's conduct do not trigger coverage under in Paragraph I(A). The Underlying Complaint does not identify any negligent conduct of Clark, much less any act, error or omission of Clark in rendering or failing to render Professional Services (as defined in the Policy) in any of the roles listed in Paragraph I(A). Bryant is not an Insured or a Named Insured under the Policy. Bryant may have performed one or more services listed in Paragraph I(A) and may have done so while employed by LifeCo, but those facts alone would not trigger coverage under Paragraph I(A) because the definition of

"Professional Services" requires that the services be for the conduct of Clark's role as an insurance agent. The Underlying Complaint does not include any allegations about Clark or his insurance activities on behalf of the sponsoring life insurance companies.

During the hearing on July 22, 2009, Defendants' counsel emphasized Paragraph I(D). Paragraph I(D) obligates the insurer "[t]o pay on behalf of the INSURED, all sums which the INSURED shall become legally obligated to pay as DAMAGES because of [a]ny actual or alleged failure of a NAMED INSURED covered by this policy to supervise, manage, or train." The Defendants point out that the Underlying Complaint alleges LifeCo's negligent hiring, supervision, management and retention of Bryant.

The Defendants' argument ignores the fact that the Policy provides separate definitions for the terms "Named Insured" and "Insured." Clark – not LifeCo – is the Named Insured. For Paragraph I(D) to apply, the Underlying Complaint must implicate Clark's negligent supervision, management, or training. The Defendants's contention that the Miller and Becker's claims are based on Clark's negligent supervision of Bryant mischaracterizes the Underlying Complaint. The Underlying Complaint alleges that Bryant was employed as the President of LifeCo. The Underlying Complaint says nothing about Clark. If there is any factual basis for Defendants' contention that Clark's employment duties included supervising, managing or training Bryant, those facts are not within the allegations of the Underlying Complaint.

In sum, the negligence claims in the Underlying Complaint do not fall within the coverages provided in the Coverage Enhancement – Level II.

Assuming the contrary – that the claims against LifeCo are within the Policy's coverage,

AAIC has carried its burden of showing that the allegations of the Underlying Complaint are

solely and entirely within Policy exclusions.  The Policy does not apply to:

> Any claim arising out of the design, purchase, sale, advice or consultation
> regarding:
>
> * * *
>
> Promissory notes;
>
> * * *
>
> SECURITIES or other investment products that are not authorized or
> approved by an NASD licensed BROKER/DEALER; . . . .

(Policy, Additional Exclusions.)  This exclusion precludes coverage because all of the claims in

the Underlying Complaint arose out of Miller and Becker's dealings with Bryant regarding the

NCM notes, and the purchase and sale of those notes.

The Defendants seek to avoid this result by characterizing their claims as arising out of

Clark's and LifeCo's negligent conduct in the provision of "insurance, employee benefits,

annuities, and related 'plain vanilla' financial planning services." (Defs.' Am. Resp. Br. at 20.)

The Defendants state that under Colorado law, the term "arising out of" connotes "but for"

causation.  The Defendants also argue that the exclusion does not apply because the NCM notes

turned out to be illusory.

The Defendants' arguments do not avoid the promissory note exclusion.  The Underlying

Complaint is replete with references to the NCM notes.  (Underlying Comp. ¶¶ 11-13, 18-22, 24,

26.)  The negligence claims are premised on the theory that LifeCo should have protected its

customers from being victimized by the NCM note scam.  The negligence claims sought the

recovery of the investment losses that Miller and Becker suffered as a result of their purchase of

the NCM notes.  Any requirement of "but for" causation is satisfied.  The applicability of the

exclusion does not depend on the quality or value of the NCM notes.

In addition, this exclusion encompasses any claims arising out of the purchase, sale,

advice or consultation regarding securities or other investment products not authorized or

approved by an NASD licensed Broker/Dealer.  The Defendants do not suggest that the NCM

investment product was authorized by any NASD licensed Broker/Dealer.  They attempt to avoid

this exclusion by arguing that "Miller and Becker did not invest in any investment product

whatsoever."  (Defs. Am. Resp. Br. at 20.)  That argument ignores the factual allegations of the

Underlying Complaint and the language of the Policy.  The term "securities" is defined in the

Policy to "have the same meaning as the term used by the Securities Act of 1933, the Securities

Exchange Act of 1934, the Investment Company Act of 1940, or the Investment Advisors Act of

1940. (Policy, Form No. 144050 05-00, at p. 7.)  The Defendants's argument does not address

the Policy's definition of that term.  They have not cited any legal authority supporting their

view that an investment product that otherwise meets the definition of a security falls outside

that definition when the investment product is later discovered to have been fraudulent.

In addition, the Policy does not apply to:

> Any claim arising out of the insolvency, receivership, bankruptcy, liquidation or
> financial inability to pay of any organization in which the INSURED has (directly
> or indirectly) placed or obtained coverage or which an INSURED has (directly or
> indirectly) placed the funds of a client or an account or in which any person has
> invested as a result of consultation with an INSURED. This Exclusion will not apply
> if the organization in which funds were placed or coverage obtained was rated "A-"
> or better by the A.M. Best and Company and was admitted by the applicable
> jurisdiction of the placement.

(Policy, Form No. 144050 05-00, at p. 12.)

The Defendants dispute the applicability of this exclusion, emphasizing their contention that the underlying claims arise out of LifeCo's negligent provision of insurance services. The Defendants also repeat their argument that Miller's and Becker's money never was placed into any investment at NCM.

Contrary to the Defendant's arguments, this exclusion precludes coverage. The Underlying Complaint alleges that Miller and Becker invested in NCM as a result of consultations with Bryant, who acted as LifeCo's actual or apparent agent, and that NCM has sought bankruptcy protection, resulting in the loss of Miller's and Becker's investment. Claims arising from those circumstances are excluded.

AAIC also denied coverage on the basis of the fraud exclusion. That exclusion bars coverage for:

> Any act, error, omission or PERSONAL INJURY committed with dishonest, fraudulent, criminal or malicious purpose or intent; or claim arising out of DAMAGES which are expected or intended by the INSURED. However, this Exclusion does not apply to any act which is the basis of a malicious prosecution claim.

(Policy, Form No. 144050 05-00, at p. 11.) It is undisputed that this exclusion precludes coverage for the third claim for relief in the Underlying Complaint. It is not necessary to reach the issue of whether this exclusion also precludes coverage for the negligence claims, because the other exclusions have that effect. It is noteworthy that the negligence claims were premised mainly on factual allegations stated on information and belief and conclusory allegations about LifeCo's legal duties. The factual support for the alleged duties is particularly vague. For example, the Underlying Complaint does not identify the dates when Miller and Becker purchased the NCM notes, although that information was within the knowledge of Miller and

-17-

Becker when they filed the Underlying Complaint and would be relevant to the scope of any

duties owed by LifeCo.  It is also noteworthy that the Underlying Complaint states that LifeCo

owed a duty of reasonable care to safeguard client information from unauthorized disclosure, but

there are no allegations that such information was confidential.  And, it is unclear what duties

LifeCo would have owed Becker with respect to safeguarding client information when Becker

was not alleged to have had any relationship with LifeCo other than his communications with

Bryant regarding the NCM notes.

The allegations of negligence are sufficiently vague that there could be an issue of

whether those claims were included in an artful attempt to trigger coverage and avoid the

Policy's fraud exclusion.  In *Pompa*, the United States Court of Appeals for the Tenth Circuit

recognized that the Colorado Supreme Court has left open "the question whether allegations

framed to trigger an insurance policy create a duty to defend."  *Pompa*, 520 F.3d at 1147

(quoting *Cotter Corp.*, 90 P.3d at 829 n.9; *Constitution Assocs.*, 930 P.2d at 563 n.10

(Colo.1996) ("We leave for another day the question of whether unsupported allegations framed

to trigger insurance coverage give rise to a duty to defend under *Hecla*.")).  That issue need not

be addressed at this time because AAIC has carried its burden of showing that underlying claims

do not fall within the Policy's coverage and are solely and entirely within other Policy

exclusions.

In sum, AAIC had no duty to defend the Underlying Action.  "Where there is no duty to

defend, it follows that there can be no duty to indemnify." *Constitution Assocs.,* 930 P.2d at 563.

In its motion for summary judgment, the Plaintiff requested dismissal of the Defendants'

claim for double damages, arguing that the statutory basis for that claim, C.R.S. §§ 10-3-1115

and 1116, became effective on August 5, 2008, and does not apply retrospectively.  The

determination that AAIC had no obligation to defend or indemnify renders that issue moot.

For the reasons stated above, the Defendants' counterclaims for declaratory relief and

breach of contract fail.

Based on the foregoing, it is

ORDERED that the Plaintiff's motion for summary judgment is granted, and it is

FURTHER ORDERED that the clerk shall enter judgment declaring that the Plaintiff

American Automobile Insurance Company had no obligation to defend LifeCo, Inc. in the civil

action designated as Melissa A. Miller and Dennly Becker v. LifeCo, Inc., Case No. 07-CV-782,

in the District Court for Arapahoe County, Colorado, and declaring that American Automobile

Insurance Company has no obligation of indemnification with respect to the judgments entered

in favor of Melissa Miller and Dennly Becker in that action.  It is

FURTHER ORDERED that judgment shall enter in favor of the Plaintiff American

Automobile Insurance Company on all of the Defendants' counterclaims.

Dated:  August 11, 2009

BY THE COURT:

s/Richard P. Matsch

Richard P. Matsch, Senior District Judge